# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **HARLEY M. BRADY,** | ) | |
| **Y-13122,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17−cv−883−NJR** |
| | ) | |
| **JOHN BALDWIN,** | ) | |
| **STEVE DUNCAN,** | ) | |
| **DR. JAMES,** | ) | |
| **DR. AHMED,** | ) | |
| **JOHN DOE 3,** | ) | |
| **UNKNOWN PARTY,** | ) | |
| **TARRY WILLIAMS,** | ) | |
| **JANE DOE 1-10,** | ) | |
| **JOHN/JANE DOE 11-20,** | ) | |
| **WEXFORD HEALTH SOURCES INC.,** | ) | |
| **JANE DOE 21** | ) | |
| **MISS KIMMEL,** | ) | |
| **JOHN COE,** | ) | |
| **JANE DOE 22,** | ) | |
| **JANE DOE 23, and** | ) | |
| **MR. SHAH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Harley M. Brady, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this *pro se* action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. On November 1, 2017, the Court screened the original Complaint pursuant to 28 U.S.C. § 1915A. As part of screening, the Court severed unrelated claims into new actions. The claims remaining in this action, all of

which were directed against an Unknown Party[1] did not survive preliminary review, and the original Complaint was dismissed without prejudice. On April 13, 2018, after receiving four extensions, Plaintiff filed his Amended Complaint.

The Amended Complaint (Doc. 19) is now before the Court for a preliminary review pursuant to Section 1915A. In the Amended Complaint, Plaintiff claims officials at Stateville Northern Reception and Classification Center ("Stateville NRC") and Lawrence have violated his constitutional rights. As set forth below, the Court finds that the claims pertaining to Stateville NRC are not properly joined with the claims pertaining to Lawrence. Accordingly, the Court will exercise its discretion and sever unrelated claims into separate actions once again.

## Preliminary Review – Applicable Standard

Section 1915A provides as follows:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

---

[1] The subject claims were not associated with a specific defendant. Accordingly, the Court construed the claims as being directed against an Unknown Party.

*Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

As a part of screening, the Court is also allowed to sever unrelated claims against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that the practice of severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*. This practice is encouraged. The Seventh Circuit Court of Appeals has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez,* 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, No. 15-3325, 2017 WL 2417889 (7th Cir. June 5, 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). Consistent with *George*, *Owens*, and *Wheeler*, improperly joined parties and/or claims will be severed into new cases, given new case numbers, and assessed separate filing fees.

**The Amended Complaint**

In October 2014, Plaintiff was housed at Stateville NRC. (Doc. 19, p. 2). Approximately one month later, in November 2014, Plaintiff was transferred to Lawrence, which became his "parent facility." *Id.* Since then, Plaintiff has been housed at Lawrence. *Id.* For approximately five months (from November 2014 through March 2015), however, Plaintiff was periodically

transferred between Lawrence and Stateville NRC to attend hearings and status conferences in his criminal proceeding. *Id.*

Plaintiff claims that officials at Stateville NRC (from October 2014 through March 2015) and Lawrence (beginning in November 2014) have exhibited deliberate indifference to his painful digestive symptoms and other medical issues. (Doc. 19, pp. 2-22). According to Plaintiff, his painful digestive symptoms include: (1) acid reflux symptoms that cause him to wake up in the middle of the night; (2) excessive, foul gas; (3) intestinal cramping; (4) bouts of constipation; (5) loose bowels, lasting for days at a time; (6) vomiting and dry heaving; and (7) being "painfully tired." (Doc. 19, p. 11). Plaintiff also brings allegations pertaining to other medical issues, including thyroid problems, a suspected hernia, a rash that covers his back, and lumps in his throat. (Doc. 19, pp. 2-22). A more detailed summary of Plaintiff's claims, as they relate to each institution, is provided below.

*Stateville*

In October 2014, when Plaintiff was housed at Stateville NRC, Plaintiff began experiencing painful digestive issues and bowel problems. (Doc. 19, pp. 2, 11). Plaintiff yelled for help, but the nurses (Jane Does 1-10) and correctional officers (John and Jane Does 11-20) ignored him.

On March 11, 2015, Plaintiff was transferred to Stateville NRC to attend a hearing. (Doc. 19, pp. 14-15). According to Plaintiff, "Unknown Party" failed to provide him with his prescription medication. (Doc. 19, p. 14).

Additionally, while at Stateville NRC, between March 13, 2015, and March 15, 2015, Jane Doe Nurse No. 22 denied Plaintiff his prescription medication. (Doc. 19, pp. 14-15).

Plaintiff filed an emergency grievance pertaining to being denied his medication. (Doc. 19, p. 15). Warden Williams denied the grievance, deeming it a nonemergency. *Id.*

**Lawrence**

When Plaintiff arrived at Lawrence, Nurse Arbuckle (not a defendant in this action) completed his intake examination. (Doc. 19, p. 11). Plaintiff complained to Nurse Arbuckle about his digestive issues. *Id.* She explained that the purpose of an intake examination is to identify serious issues such as risk for a heart attack and suicidal ideation. (Doc. 19, p. 12). Nurse Arbuckle said she would place Plaintiff on sick call so another medical official could evaluate his digestive symptoms. *Id.*

In early February 2015, Plaintiff was seen by Jane Doe Nurse No. 21. *Id.* Plaintiff complained to Jane Doe Nurse No. 21 about indigestion, gas, cramping, constipation, and loose bowels. *Id.* Jane Doe Nurse No. 21 referred Plaintiff for further treatment with a physician, but the referral was limited to treatment for indigestion and did not reference his other symptoms. *Id.*

On February 11, 2015, Plaintiff was examined by Dr. Coe. *Id.* Dr. Coe diagnosed Plaintiff with gastroesophageal reflux disease ("GERD") and prescribed antacids. (Doc. 19, pp. 13-14). Dr. Coe refused to discuss Plaintiff's other symptoms, stating he "was not here for that." (Doc. 19, p. 13). Plaintiff also told Dr. Coe he believed his symptoms might be related to a food allergy or sensitivity and/or thyroid problems. *Id.* Plaintiff told Dr. Coe he suspected thyroid problems because his sister has thyroid issues. (Doc. 19, p. 14). Dr. Coe refused to address any of these issues. (Doc. 19, pp. 13-14).

Plaintiff claims that Dr. Coe refused to address his other symptoms because he was enforcing a cost-cutting policy implemented by Wexford. *Id.* According to Plaintiff, Wexford has implemented a policy directing staff to restrict sick call referrals and medical appointments

to one medical issue per visit. *Id.* Pursuant to this policy, a prisoner may only discuss one medical issue per medical appointment; if a prisoner is experiencing multiple issues he must request additional appointments. *Id.* Plaintiff claims that Dr. Coe enforced this policy because, if he successfully controls costs, he receives financial incentives from Wexford. *Id.*

On May 27, 2015, Plaintiff met with Dr. Paul (not a defendant in this action) via teleconferencing regarding his recent blood panels. (Doc. 19, p. 15).[2] The testing revealed Plaintiff's thyroid stimulating hormone (TSH) was 3.42, which Plaintiff describes as being "high but in range" (according to Plaintiff normal range is .35 to 4.0). *Id.* Jane Doe Nurse No. 23 told Dr. Paul she would discuss the results with Dr. Coe and determine how he wanted to address any potential thyroid concerns. *Id.* Plaintiff was not immediately examined by Dr. Coe or put on thyroid medication at that time. *Id.* Plaintiff does not know why his treatment was delayed. *Id.*

Sometime after the visit with Dr. Paul, Plaintiff ran out of the antacid medication previously prescribed by Dr. Coe. *Id.* As a result, Plaintiff claims his digestive symptoms returned. *Id.* According to Plaintiff, in an effort to cut costs, Wexford has implemented policies that delay prescription refills, meaning prisoners often run out of medication. *Id.*

On July 7, 2015, Plaintiff was seen by Nurse Kimmel. (Doc. 19, pp. 15-16). The purpose of the visit was to renew Plaintiff's antacid prescription. *Id.* Plaintiff told Nurse Kimmel he was experiencing the following symptoms: acid reflux, causing burning in his throat and nose; waking up at night with a choking sensation; excessive foul gas; intestinal cramps; constipation; loose stools; vomiting and dry heaving; and exhaustion. (Doc. 19, p. 16). Plaintiff suggested his symptoms could be related to food allergies and/or thyroid issues. *Id.* Plaintiff's suggestion

---

[2] Plaintiff indicates that he has "HPC." (Doc. 19, p. 18). Plaintiff briefly references "IDOC's refusal to treat [his] HPC in defiance of a court order to do so." *Id.* However, Plaintiff does not appear to be bringing any claims with regard to this alleged lack of treatment. It also appears that, because of his condition, he has periodic blood testing through a chronic care clinic. (Doc. 19, p. 15).

angered Nurse Kimmel, and she stated, "McDonald's serves the same type of food and you ate that before you got locked up." *Id.* Plaintiff disagreed, told Nurse Kimmel she was not qualified to make a diagnosis, and asked for a physician referral. *Id.* Nurse Kimmel then had an officer remove Plaintiff from the nurse's station. *Id.* Nurse Kimmel did refer Plaintiff for further treatment. *Id.* However, the referral was limited to treatment for Plaintiff's indigestion. *Id.*

On July 13, 2015, Plaintiff was again examined by Dr. Coe. *Id.* At that time, Dr. Coe renewed Plaintiff's antacid prescription, but he refused to treat Plaintiff's severe gas and irregular bowel movements. *Id.* Plaintiff contends that Dr. Coe refused to discuss other medical issues in furtherance of Wexford's cost cutting policies and because he receives financial benefits for controlling costs. (Doc. 19, pp. 16-17).

In July 2015, Plaintiff's symptoms worsened. (Doc. 19, p. 17). He was increasingly tired and constantly cold, and he developed a rash on his back. *Id.*

On February 5, 2016, Plaintiff received additional blood testing, but thyroid testing was not performed. *Id.* Approximately one week later, Plaintiff met with Dr. Coe to request a refill on his antacid prescription. *Id.* Plaintiff told Dr. Coe his symptoms were getting worse. *Id.* He explained that he was constantly cold, had developed a rash, and was excessively tired. *Id.* Plaintiff requested additional thyroid testing and asked to see a specialist. *Id.* Dr. Coe prescribed more antacids, but the prescription was only for two months (as opposed to six months). *Id.* Dr. Coe refused Plaintiff's other requests. *Id.* In denying Plaintiff's request for thyroid testing, Dr. Coe noted that Plaintiff's previous TSH level, which was taken in May 2015, was high but in range. *Id.* Plaintiff claims that Dr. Coe refused to refer him to a specialist or to order additional thyroid testing in an effort to control costs. (Doc. 19, pp. 17-18).

On February 18, 2016, Plaintiff was seen by Dr. Paul via teleconferencing. (Doc. 19, p. 18). Dr. Paul told Plaintiff his liver enzymes were very high. *Id.* Plaintiff relayed his recent symptoms (weight gain, inability to stay warm, exhaustion, headaches, joint and back pain, and a rash on his back). *Id.* Dr. Paul indicated his symptoms could be related to thyroid issues. *Id.* Dr. Paul ordered additional blood testing, including another TSH test. *Id.*

On March 2, 2016, Plaintiff received additional blood testing, and on March 16, 2016, Nurse Baker (not a defendant in this action) told Plaintiff his TSH level was 4.82 (normal range is .35 to 4.0). *Id.* Plaintiff believes that Nurse Baker, with the approval of Dr. James, placed him on medication to treat this condition and to treat the rash on his back. *Id.* Specifically, Plaintiff was prescribed Synthroid (to treat his elevated TSH level) and antibiotics (to treat his rash). *Id.*

On March 23, 2016, Plaintiff received his prescriptions, but John Doe No. 3, the pharmacist, substituted Synthroid with Levothyroxine. *Id.* The pharmacist did not disclose the possible side effects of Levothyroxine. *Id.* Within a few days of taking Levothyroxine, Plaintiff began experiencing severe headaches, vertigo, difficulty swallowing, and a sensation of having lumps or knots in his throat. *Id.* Plaintiff complained to "medical" about his symptoms by submitting "2 requests." *Id.* Plaintiff also submitted a third request to Cunningham, the healthcare administrator. *Id.*

On April 1, 2016, Plaintiff received additional blood testing. (Doc. 19, p. 19). The testing revealed that Plaintiff's TSH level was 3.71. *Id.* Shortly thereafter, on April 7, 2016, Plaintiff's prescription for Levothyroxine ran out and was not refilled in a timely manner. *Id.*

On April 17, 2016, Plaintiff was seen by Dr. James. *Id.* Dr. James told Plaintiff headaches and vertigo are common side effects of Levothyroxine. *Id.* Because of the side effects, Plaintiff requested a different medication, but Dr. James refused. *Id.* Instead, he reduced Plaintiff's

Levothyroxine dosage and prescribed Motrin for headaches. *Id.* He also denied Plaintiff's request for a second opinion. *Id.*

On April 20, 2016, after running out of antacids, Plaintiff was seen by a nurse for the purpose of requesting a refill. *Id.* Two days later, Plaintiff was seen by Dr. Coe, and his antacid prescription was refilled. *Id.*

During the visit, Dr. Coe opined that Plaintiff's heartburn was being caused by a hernia. *Id.* Plaintiff asked Dr. Coe to document his concerns about the hernia and asked to be referred for surgery, but Dr. Coe refused, telling Plaintiff Wexford "does not allow for hernia surgeries." *Id.* Once again, Plaintiff relayed his concerns about having a food allergy and about possible thyroid disease, but Dr. Coe ignored his complaints. (Doc. 19, pp. 19-20).

Dr. Coe also examined the rash on Plaintiff's back and indicated the rash could be a staph infection. (Doc. 19, p. 21). Plaintiff was already taking antibiotics to treat the rash, and Dr. Coe decided to add prescription soap to Plaintiff's treatment regimen. *Id.* Plaintiff asked to be referred to a specialist, but Dr. Coe refused. *Id.*

Finally, Plaintiff spoke to Dr. Coe about feeling lumps in his throat. *Id.* Plaintiff described feeling three hard lumps in his tongue. *Id.* Dr. Coe did not examine the lumps. (Doc. 19, p. 22). Plaintiff expressed concern that the lumps might be cancerous. *Id.* Dr. Coe told Plaintiff he would wait and "see what they do." *Id.*

The Amended Complaint also includes limited references to Dr. Ahmed and Dr. Shah. (Doc. 19, pp. 22-23). Plaintiff alleges that, at unspecified times, he has been seen by Dr. Shah and Dr. Ahmed. *Id.* Plaintiff generally claims that these defendants often refuse to address medical issues that are "outside of the scope of the visit" and/or will only address these issues if he threatens litigation. *Id.*

Plaintiff also alleges that Dr. Shah and Dr. Ahmad have "continued an ineffective course of treatment for thyroid issues," by maintaining a dose of Levothyroxine that is too low for effective treatment. (Doc. 19, p. 22). Unfortunately, however, Plaintiff does not describe any visits with Dr. Shah or Dr. Ahmad. He also claims, without elaboration, that Dr. Ahmed refused to refer him for hernia surgery and that Dr. Shah and Dr. Ahmed refused to refer him to a thyroid specialist or a dermatologist. *Id.*

Plaintiff has filed several grievances regarding his medical issues. (Doc. 19, p. 23). Plaintiff complains that Defendant Duncan, the former warden at Lawrence, denied one of his emergency grievances. (Doc. 19, p. 23). Director Baldwin received a copy of an appeal pertaining to the denial of this grievance. *Id.* The appeal was eventually denied by the Administrative Review Board. *Id.*

## Designation of Counts

Based on the allegations of the Amended Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit. Any claims not addressed in this Order should be considered dismissed without prejudice from this action.

**Count 1:**      Eighth Amendment claim against Jane Doe Nurse No. 21, Nurse Kimmel, Jane Doe Nurse No. 23, and Dr. Coe for exhibiting deliberate indifference to Plaintiff's serious medical needs (gastrointestinal and/or thyroid problems including acid reflux, alternating bouts of constipation and diarrhea, cramping, vomiting and dry heaving, exhaustion, inability to stay warm, and a rash) and against Wexford for maintaining policies and customs that caused the same.

**Count 2:**     Eighth Amendment claim against Dr. Coe and Dr. James for failing to timely refill Plaintiff's necessary prescription medications and against Wexford for maintaining policies and customs that caused the same.

**Count 3:**     Eighth Amendment claim against Dr. Coe for failing to treat Plaintiff's suspected hernia and against Wexford for maintaining policies and customs that caused the same.

**Count 4:**     Eighth Amendment claim against Dr. James for declining to substitute Plaintiff's Levothyroxine medication with a different medication and for denying Plaintiff's request for a second opinion on April 17, 2016.

**Count 5:**     Eighth Amendment claim against Dr. Shah and Dr. Ahmed for exhibiting deliberate indifference to Plaintiff's serious medical needs.

**Count 6:**     Fourteenth Amendment claim against John Doe No. 3 for failing to provide Plaintiff with information about Levothyroxine.

**Count 7:**     Claim against Duncan, Baldwin, and Cunningham for failing to respond to and/or mishandling Plaintiff's grievances pertaining to his medical care at Lawrence.

**Count 8:**     In October 2014, when Plaintiff was housed at Stateville NRC, Jane Does 1-10 (unidentified nurses) and John and Jane Does 11-12 (unidentified correctional officers) exhibited deliberate indifference to Plaintiff's digestive issues and bowel problems, in violation of the Eighth Amendment.

**Count 9:**     On March 11, 2015, when Plaintiff was housed at Stateville NRC, Unknown Party failed to provide Plaintiff with his prescription medication, in violation of the Eighth Amendment.

**Count 10:**    Between March 13, 2015, and March 15, 2015, when Plaintiff was housed at Stateville NRC, Jane Doe Nurse No. 22 denied Plaintiff his prescription medication, in violation of the Eighth Amendment.

**Count 11:**    Claim against Warden Williams for denying Plaintiff's emergency grievance, which pertained to the denial of prescription medication in March 2015, as a non-emergency.

## Severance

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the claims directed against Stateville NRC officials (Counts 8 through 11) into a separate action. This separate action, for Counts 8 through 11, will have a newly assigned case number and shall be assessed a filing fee. The severed case shall undergo preliminary review pursuant to Section 1915A after the new case number and judge assignment has been made.

Counts 1 through 7, which appear, at least tenuously, to be properly joined in a single action, shall remain in this action and shall receive preliminary review below.

## Merits Review Under Section 1915(A) – Counts 1 through 7

*Count 1*

A prisoner who wishes to bring a claim against state officials under the Eighth Amendment must show that he suffered from a sufficiently serious medical condition (objective standard) and that state officials exhibited deliberate indifference to his medical needs (subjective standard). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

For screening purposes, the Court finds that Plaintiff's gastrointestinal and/or thyroid issues (acid reflux, alternating bouts of constipation and diarrhea, cramping, vomiting and dry heaving, exhaustion, and inability to stay warm) constitute a sufficiently serious medical condition.

Plaintiff has sufficiently alleged that Jane Doe Nurse No. 21, Nurse Kimmel, and Dr. Coe exhibited deliberate indifference to his medical needs. According to the Amended Complaint, despite being aware of Plaintiff's numerous medical complaints, Jane Doe Nurse No. 21 and Nurse Kimmel only referred Plaintiff for treatment of a single medical issue (indigestion).

Similarly, Plaintiff alleges that Dr. Coe repeatedly refused to treat, or even discuss, several of his known medical issues. Plaintiff claims his medical examinations were artificially limited to a single medical issue in an effort to control costs, and that this conduct delayed necessary medical treatment and/or exacerbated his symptoms. These allegations are sufficient to allow Count 1 to proceed against Jane Doe Nurse No. 21, Nurse Kimmel, and Dr. Coe. *See* e.g., *Petties v. Carter*, 836 F.3d 722, 727–30 (7th Cir. 2016) (*en banc*); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012); *Arnett v. Webster*, 658 F.3d 742, 751-53 (7th Cir. 2011); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

Plaintiff further alleges that these medical officials were acting pursuant to a policy and practice implemented by Wexford in an effort to control medical costs at Lawrence. Accordingly, Count 1 shall also proceed as to Wexford. *See Whiting v. Wexford Health Sources*, Inc., 839 F.3d 658, 664 (7th Cir. 2016); *Perez v. Fenoglio*, 792 F.3d 768, 780 & n. 5 (7th Cir. 2015).

Count 1 shall be dismissed without prejudice, however, as to Jane Doe Nurse No. 23. According to the Amended Complaint, on May 27, 2015, Jane Doe Nurse No. 23 indicated she would discuss Plaintiff's TSH test results with Dr. Coe and inquire about how he wanted to proceed. (Doc. 19, p. 15). Plaintiff next met with Dr. Coe in July 2015. (Doc. 19, pp. 16-17). The fact that Plaintiff was not immediately seen by Dr. Coe, standing alone, does not plausibly allege deliberate indifference on the part of Jane Doe Nurse No. 23. Accordingly, Count 1 shall be dismissed without prejudice as to this defendant.

*Count 2*

According to the Amended Complaint, Dr. Coe repeatedly allowed Plaintiff's antacid prescription to lapse, and, on one occasion, Dr. James allowed Plaintiff's Levothyroxine

prescription to lapse. According to Plaintiff, the gaps in his prescriptions unnecessarily prolonged and exacerbated his painful symptoms. Further, Plaintiff suggests that Dr. James and Dr. Coe were acting in furtherance of a cost-cutting policy implemented by Wexford. These allegations are sufficient to allow Count 2 to proceed as to Dr. Coe, Dr. James, and Wexford. *See Gomez*, 680 F.3d at 865 (7th Cir. 2012); *Whiting*, 839 F.3d at 664.

**Count 3**

According to the Amended Complaint, on April 20, 2016, Dr. Coe opined that Plaintiff's symptoms were the result of a hernia. Dr. Coe refused to document the suspected condition or to refer Plaintiff for surgery, however, because Wexford has a policy of not approving surgeries in order to save costs. For screening purposes, Plaintiff's hernia satisfies the objective prong of a deliberate indifference claim. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). He has also sufficiently alleged deliberate indifference as to Dr. Coe and Wexford. *See Gomez*, 680 F.3d at 865 (7th Cir. 2012); *Whiting*, 839 F.3d at 664. Accordingly, Count 3 shall receive further review.

**Count 4**

On April 17, 2016, Plaintiff was seen by Dr. James and complained about the side effects he was experiencing after being prescribed Levothyroxine. (Doc. 19, p. 19). Plaintiff asked for a different medication and for a second opinion. *Id.* Dr. James denied his requests. *Id.* He did, however, lower the dosage of Levothyroxine and prescribed pain medication for Plaintiff's headaches. *Id.* The fact that Dr. James did not provide Plaintiff with the specific medication he desired or that he did not refer Plaintiff for a second opinion does not, standing alone, suggest deliberate indifference. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care

possible," but only requires "reasonable measures to meet a substantial risk of serious harm.").

Accordingly, Count 4 shall be dismissed without prejudice for failure to state a claim upon which

relief may be granted.

***Count 5***

The Amended Complaint includes a few generic and conclusory allegations pertaining to

Dr. Ahmad and Dr. Shah. For example, Plaintiff alleges that these physicians refused to refer

him to a thyroid specialist, a dermatologist, and/or for hernia surgery. But Plaintiff does not

provide any additional detail regarding the allegedly unconstitutional medical care. Without

more, allegations such as these do not plausibly suggest that either defendant provided

constitutionally deficient medical care. *See Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009).

Accordingly, Count 5 shall be dismissed without prejudice for failure to state a claim upon which

relief may be granted.

***Count 6***

Plaintiff claims that John Doe No. 3 substituted Synthroid with Levothyroxine, without

giving him information about the drug's known side effects. (Doc. 19, p. 18). These allegations

are akin to the "informed consent" theory of liability recognized by the Second Circuit Court of

Appeals in *Pabon v. Wright*, 459 F.3d 241 (2d Cir. 2006):

> [T]he Fourteenth Amendment's recognized liberty interest in an individual's right
> to refuse medical treatment carries with it a concomitant right to such information
> as a reasonable patient would deem necessary to make an informed decision
> regarding medical treatment. To establish a violation of this right, a prisoner must
> show that (1) government officials failed to provide him with such information;
> (2) this failure caused him to undergo medical treatment that he would have
> refused had he been so informed; and (3) the officials' failure was undertaken
> with deliberate indifference to the prisoner's right to refuse medical treatment.

*Pabon*, 459 F.3d at 246.

The Seventh Circuit has commented on this theory of liability on two occasions. *See Phillips v. Wexford Health Sources, Inc.*, 522 F. App'x 364, 367 (7th Cir. 2013) ("*Phillips*"); *Cox v. Brubaker*, 558 F. App'x 677, 678–79 (7th Cir. 2014) ("*Cox*"). In *Phillips*, the Seventh Circuit stated, in the context of an Eighth Amendment deliberate indifference claim, that it has "adopted a general rule that is consistent with these circuits." *Phillips*, 522 F. App'x at 367. Subsequently, in *Cox*, the Seventh Circuit applied the elements of a Fourteenth Amendment due process claim for lack of informed consent–as set forth by other circuits–to affirm a district court's grant of summary judgment in favor of medical staff. *Cox*, 558 F. App'x at 679. The Seventh Circuit declined, however, to endorse or decide the scope of such a claim. *Id.* ("the case does not require us to recognize, or decide the scope of, this due-process right").

Given the current legal landscape, a *sufficiently stated* Fourteenth Amendment due process claim for lack of informed consent would survive preliminary screening. As presently drafted, however, the Amended Complaint fails to state such a claim. Plaintiff has not alleged that he would have refused treatment had he been properly informed. Accordingly, **Count 6** shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Count 7

With little elaboration, Plaintiff claims that Defendants Duncan, Baldwin, and Cunningham failed to address and/or denied his grievances. Generally, the denial or mishandling of a grievance – standing alone – is not enough to violate the United States Constitution. *See, e.g.*, *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the

underlying conduct states no claim."); *George v. Abdullah*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). That being said, an official may be subject to liability if he or she "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996).

In this case, Plaintiff has alleged that Duncan, Baldwin, and Cunningham (officials who were not involved in the underlying constitutional violations) denied or mishandled grievances. Considering the authority discussed above, these allegations state no claim. And, without additional factual allegations, Plaintiff has not plausibly alleged that these officials are subject to liability under the standard articulated in *Perez* or related authority. As such, Count 7 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Identification of Unknown Defendant and Injunctive Relief

Where a prisoner's complaint states specific allegations describing conduct of individual staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In order to allow Plaintiff to pursue such discovery, the Clerk shall be directed to add Kevin Kink, the current warden of Lawrence, as a defendant in this action, in his official capacity only. He shall be responsible for responding to discovery aimed at identifying Jane Doe Nurse No. 21. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of this individual is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the

Complaint.

Warden Kink is also the appropriate party with respect to Plaintiff's request for injunctive relief. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Accordingly, he shall remain on the docket, in his official capacity, for the purpose of carrying out any injunctive relief that might be ordered.

## **Disposition**

*Severance*

**IT IS HEREBY ORDERED** that **COUNTS 8, 9, 10,** and **11** are **SEVERED** into a new case against **UNKNOWN PARTY** (Stateville NRC official that failed to provide Plaintiff with prescription medication on March 11, 2015), **TARRY WILLIAMS, JANE DOES 1-10** (Unknown Nurses at Stateville NRC), **JOHN/JANE DOES 11-20** (Unknown Correctional Officers at Stateville NRC), and **JANE DOE NO. 22** (Unknown Nurse at Stateville NRC).

**IT IS FURTHER ORDERED** that the *only claims remaining in this action,* are **COUNTS 1, 2, 3, 4, 5, 6,** and **7.**

Consistent with the severance of **COUNTS 8** through **11**, the Clerk of Court is **DIRECTED** to **TERMINATE UNKNOWN PARTY**, **TARRY WILLIAMS, JANE DOES 1-10**, **JOHN/JANE DOES 11-20**, and **JANE DOE NO. 22** as parties in *this* action.

*Newly Severed Case*

The claims in the newly severed cases shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new cases, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Amended Complaint (Doc. 19); and
- Plaintiff's motion to proceed *in forma pauperis* (Doc. 2).

Plaintiff **will be responsible for an additional $350 filing fee** in the newly severed case.[3] No service shall be ordered in the severed case until the Section 1915A review is completed.

***Merits Review of Counts 1 through 7 (The Only Claims Remaining in This Case)***

**IT IS HEREBY ORDERED** that **COUNT 1** shall proceed as to **JANE DOE NURSE NO. 21**, **KIMMEL, COE,** and **WEXFORD. COUNT 1** is **DISMISSED** without prejudice as to **JANE DOE NURSE NO. 23.**

**IT IS FURTHER ORDERED** that **COUNT 2** shall proceed as to **COE, JAMES,** and **WEXFORD**.

**IT IS FURTHER ORDERED** that **COUNT 3** shall proceed as to **COE** and **WEXFORD**.

**IT IS FURTHER ORDERED** that **COUNTS 4** through **7** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Clerk of Court is **DIRECTED** to add **KEVIN KINK** (official capacity only) as a defendant for purposes of carrying out any injunctive relief that is ordered and responding to discovery aimed at identifying the unknown defendant.

The Clerk of the Court is **DIRECTED** terminate **JANE DOE NURSE NO. 23, SHAH, AHMED, JOHN DOE NO. 3, DUNCAN, BALDWIN,** and **CUNNINGHAM** as parties in the Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS FURTHER ORDERED** that as to **COUNTS 1, 2,** and **3**, the Clerk of Court shall prepare for **KIMMEL, COE,** JAMES, **WEXFORD**, and **KINK** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6

---

[3] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

(Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the unknown defendant until such time as Plaintiff has identified her by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service address for this individual.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than

**7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

   **IT IS SO ORDERED.**

   **DATED:  July 19, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**