IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HARLEY BRADY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:17-CV-883-NJR-MAB |
| | ) |
| TRAVIS JAMES, WEXFORD HEALTH | ) |
| SOURCES, INC., TAMMY KIMMEL, | ) |
| DR. JOHN COE, KEVIN KINK, and | ) |
| JANE DOE 21, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Travis James, Wexford Health Sources, Inc., Tammy Kimmel, and Dr. John Coe[1] ("Wexford Defendants") (Doc. 48). The Court held an evidentiary hearing on the motion pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), on March 8, 2019. For the reasons set forth on the record and below, the motion is granted in part and denied in part.

BACKGROUND

**A. The Amended Complaint**

On August 21, 2017, Plaintiff Harley Brady, an inmate of the Illinois Department of Corrections ("IDOC"), filed a complaint pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was housed at Lawrence Correctional Center

---

[1] The Clerk of Court is **DIRECTED** to correct Defendants' names on the docket as follows: Travis James for Dr. James and Tammy Kimmel for Miss Kimmel.

("Lawrence") (Doc. 1). Brady later filed an Amended Complaint on April 13, 2018, alleging, in relevant part, that Defendants were deliberately indifferent to his medical issues, failed to timely refill his prescriptions, and failed to treat a hernia (Doc. 19).

On threshold review of his amended complaint, the Court determined Brady stated three claims against Defendants[2]:

**Count 1:** Eighth Amendment claim against Jane Doe Nurse, Nurse Kimmel, and Dr. Coe for exhibiting deliberate indifference to Brady's serious medical needs (gastrointestinal and/or thyroid problems including acid reflux, alternating bouts of constipation and diarrhea, cramping, vomiting and dry heaving, exhaustion, inability to stay warm, and a rash) and against Wexford for maintaining policies and customs that caused the same.

**Count 2:** Eighth Amendment claim against Dr. Coe and Dr. James for failing to timely refill Brady's necessary prescription medications and against Wexford for maintaining policies and customs that caused the same.

**Count 3:** Eighth Amendment claim against Dr. Coe for failing to treat Brady's suspected hernia and against Wexford for maintaining policies and customs that caused the same.

The Wexford Defendants have moved for summary judgment, arguing that Brady failed to exhaust his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e. Specifically, Defendants assert that while Brady wrote grievances relating to the claims he alleged in the Amended Complaint, he did not pursue any of them through all levels of appeal before filing suit.

---

[2] A number of Brady's other claims were severed into a new case (Doc. 22).

### B. Relevant Grievances[3]

#### i. April 25, 2016 Grievance

On April 25, 2016, Brady wrote a five-page, emergency grievance that he submitted directly to the Chief Administrative Officer ("CAO") (Doc. 49-2, p. 17-22). Brady complained that he was suffering from a food allergy to the soy diet provided at Lawrence (*Id.*, p. 17). He also asserted that he was having symptoms consistent with thyroid cancer (*Id.*). Specifically, Brady complained that he had severe acid reflux, excessive gas, abdominal cramping, and stomach acid rising into his throat at night, causing him to wake up choking (*Id.* p. 18). On February 11, 2015, Brady was examined by Defendant Dr. Coe, who prescribed him antacids for his heartburn but declined to put him on a soy-free diet (*Id.*).

Brady further complained that in April 2015 he began feeling tired frequently and was always cold (*Id.*). On May 27, 2015, he had blood work done that showed his thyroid hormone to be in the normal but high range (*Id.*). He was not put on any medication at that time (*Id.*). On July 7, 2015, Brady saw Defendant Kimmel at nurse sick call to renew his antacid medication (*Id.*). He told Kimmel he believed he was allergic to soy, but she got angry at this suggestion (*Id.*).

The grievance also stated that on July 13, 2015, Dr. Coe saw Brady and renewed his prescription for antacids (*Id.*, pp. 17-18). Brady again tried to explain that he may be allergic to soy, but Dr. Coe did not seem to care and did not put him on a "no soy" diet (*Id.*). Sometime in February 2016, Dr. Coe renewed Brady's antacid prescriptions for two months (instead of the usual six months) (*Id.*). He again refused to put Brady on a "no soy" diet (*Id.*).

---

[3] Brady filed two additional grievances on February 26, 2018, and April 27, 2018, which the Court declines to address since they were filed *after* Brady initiated this lawsuit.

Brady further asserts in the grievance that on March 16, 2016, he was informed his thyroid hormone levels were high and was placed on Levothyroxine at 25 mcg twice per day, which caused him vertigo and headaches (*Id.*, p. 19). On April 7, 2016, he ran out of Levothyroxine, which caused him to get tired and sleep more (*Id.*, p. 20). On April 12, 2016, Brady saw Dr. James, who told him the headaches and vertigo were side effects of Levothyroxine (*Id.*). Dr. James cut down his prescription to 25 mcg once per day (*Id.*). Dr. James ignored his complaints of trouble swallowing and did not care about his potential allergy to soy (*Id.*).

Brady also complains that on April 15, 2016, he was called to nurse sick call to receive medication, but was told there was no current prescription for his antacids. To get his antacids, he had to go back to nurse sick call and be referred to the doctor (*Id.*). He saw Dr. Coe on April 22, 2016, and again told him about the soy allergy symptoms (*Id.* at p. 22). Dr. Coe told him his heartburn is probably a hernia in his stomach (*Id.*). Dr. Coe did not put him on a "no soy" diet (*Id.*).

On April 27, 2016, the CAO found the grievance was not an emergency. The grievance stated, "Offender should submit this grievance in the normal manner." *(Id.)*. Brady appealed the denial to the Administrative Review Board ("ARB") on May 4, 2016. The ARB denied the appeal on June 3, 2016, because Brady did not provide a copy of the counselor's, Grievance Officer, and CAO's response (*Id.*, p. 16).

ii. **February 7, 2017 Grievance**

Brady filed an emergency grievance on February 7, 2017, complaining about his prescriptions not being refilled, including his Synthroid, Pepcid, Tums, and ibuprofen (Doc. 49-2, p. 14-15). On February 9, 2017, the CAO expedited the grievance as an emergency

(*Id.*, p. 14). On February 10, 2017, the counselor responded that, per the Health Care Unit, Brady had received all prescribed medication and should use the sick call process. Brady then appealed the grievance to the ARB, which rejected it because he did not include the Grievance Officer or CAO's response (*Id.*, p. 13). Defendants concede that Brady exhausted this grievance, as he obtained the relief he requested (his prescription medications). *See Thornton v. Snyder*, 428 F.3d 690, 696 (7th Cir. 2005) (when there is no possibility of any further relief via higher appeal, the prisoner's duty to exhaust available remedies is complete).

### iii. April 4, 2017 Grievance

On April 4, 2017, Brady filed an emergency grievance complaining of a delay in receiving his April prescription refills (*Id.*, p. 11). He stated that every month he submits his refill tabs as instructed, but the refills do not arrive on time (*Id.*). Specifically, Brady turned in his refill slip on March 24, 2017, but as of April 4, 2017, he still had not gotten his refills (*Id.*). On April 8, 2017, the CAO denied that the grievance was an emergency and instructed Brady to resubmit it in the normal manner (*Id.*). Instead, Brady sent it directly to the ARB, which denied the grievance because Brady did not provide any institutional responses (*Id.*, p. 10).

### iv. June 29, 2017 Grievance

Brady complained in an emergency grievance on June 29, 2017, that Dr. Coe told him he had a hernia but would not tell him if he needed surgery (Doc. 49-1, pp. 1-2). Brady requested an evaluation by a specialist for a hernia and to receive surgery if necessary (*Id.*). The CAO denied the grievance was an emergency on July 6, 2017 (*Id.*). The Counselor recommended the grievance be denied on July 12, 2017, because Brady was receiving medical care from a licensed Illinois physician within community standards of care and his medical

needs have been addressed (*Id.*). The Grievance Officer also recommended it be denied for the same reason (Doc. 49-1, p. 3). The CAO concurred on July 8, 2017 (*Id.*), but there is no record of Brady appealing the grievance to the ARB.

## LEGAL STANDARDS

Summary judgment is proper only where the moving party can demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). All facts and reasonable inferences must be construed in favor of the non-moving party. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (*citing Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647-48 (7th Cir. 2016)).

The Prison Litigation Reform Act requires prisoners to exhaust all administrative remedies before bringing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). Proper exhaustion requires an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). In *Pavey v. Conley*, the Seventh Circuit instructed district courts to conduct a hearing to determine whether a plaintiff has exhausted his remedies. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

Under the Illinois Administrative Code, an inmate must file a grievance with the counselor or Grievance Officer within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the CAO (the Warden) within two months of

receipt, "when reasonably feasible under the circumstances." *Id*. § 504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An offender may also request a grievance be handled as an emergency by forwarding the grievance directly to the CAO. *Id.* § 504.840. If there is a substantial risk of imminent personal injury or harm to the offender, the grievance should be handed on an emergency basis. *Id.* § 504.840(a). Prior to April 1, 2017, if the CAO determined the grievance was *not* an emergency, the IDOC rules only required that the grievance be appealed to the ARB—not resubmitted through the normal channels. *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) ("There is nothing in the current regulatory text, however, that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis."); *Glick v. Walker*, 385 F. App'x 579, 583 (7th Cir. 2010) ("an inmate who seeks emergency review under § 504.840 has no obligation to resubmit the grievance through normal channels, even if the warden concluded that expedited review was unnecessary").

This portion of the Illinois Administrative Code was amended effective April 1, 2017. Under the amended version of § 504.840, if the CAO determines the grievance should not be handled on an emergency basis, "the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE. § 504.840(c).

## DISCUSSION

As an initial matter, the Court notes that Brady asserts in his memorandum that he has "missing grievances," *i.e.*, grievances he submitted that then disappeared (Doc. 56, p. 2). Upon inquiry at the evidentiary hearing, however, Brady was unable to provide any details about those grievances. Furthermore, Brady is clearly familiar with the grievance process and

maintains an entire file folder of grievances. While he testified he is not always able to make copies of grievances, his inability to provide *any* specific information regarding these alleged missing grievances leads the Court to find his assertion incredible.

Turning to the grievances in the record, the Court finds that Defendants have failed to carry their burden of proving Brady failed to exhaust his administrative remedies as to his April 25, 2016 emergency grievance. On April 27, 2016, the CAO declined to expedite the grievance as an emergency, and Brady appealed the denial to the ARB on May 4, 2016. The ARB also denied the grievance, instructing Brady to provide a copy of his counselor's response, the Grievance Officer's response, and the CAO's response, "if timely." (Doc. 49-2, p. 16). Under the regulations in effect at that time, Brady was not required to take any further steps to exhaust his administrative remedies. Defendants' suggestion that Brady was required to resubmit his grievance through the normal prison grievance channels is unsupported by the law. *See Glick*, 385 F. App'x at 583 ("The defendants' position that he was required to go back to the grievance officer and start over after his emergency grievance had been rejected by the warden and the ARB is at odds with 20 Ill. Admin. Code. § 504.840 and *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005).").

In his April 25, 2016 grievance, Brady clearly complains about Dr. Coe and Kimmel ignoring his ongoing gastrointestinal and thyroid issues. He also references Wexford and the doctors it employs as refusing to properly document his symptoms (Doc. 49-2, p. 17). Accordingly, this grievance satisfies the requirements of 20 ILL. ADMIN. CODE § 504.810(c), and Brady's claims in Count 1 have been properly exhausted.

Regarding Brady's February 7, 2017 grievance, Defendants conceded at the hearing that Brady sufficiently exhausted this grievance. On February 9, 2017, the CAO expedited the

grievance as an emergency (Doc. 49-2, p. 14). On February 10, 2017, the counselor responded that, per the HCU, Brady had received all prescribed medication and should use the sick call process (*Id.*). At that point, because Brady had received the relief he requested (his prescriptions), he did not need to further appeal the grievance. *See Thornton v. Snyder*, 428 F.3d 690, 696 (7th Cir. 2005) (when there is no possibility of any further relief via higher appeal, the prisoner's duty to exhaust available remedies is complete).

Brady did not, however, adequately identify Defendants Dr. Coe or Travis James in this grievance. While the exact names of the defendants are not required to satisfy the Administrative Code, "when the names of individuals are not known . . . the offender must include as much descriptive information about the individual as possible." 20 ILL. ADMIN. CODE § 504.810(c). Because Brady does not reference any doctor or other medical personnel in his grievance, the Court finds he did not exhaust his claim in Count 2 as to Dr. Coe and Dr. James. On the other hand, Brady does refer to Wexford's negligence in causing his prescriptions to be delayed. Thus, Count 2 is exhausted as to Wexford.

Brady's remaining grievances were not properly exhausted. The CAO denied the emergency nature of his April 4, 2017 grievance and instructed Brady to resubmit it in the normal manner per the revised version of the Administrative Code. Instead, Brady improperly submitted it directly to the ARB. And while Brady obtained institutional responses to his June 29, 2017 grievance regarding treatment for his hernia, there is no evidence he appealed the denial of that emergency grievance to the ARB. Accordingly, Brady did not exhaust his claim in Count 3 against Dr. Coe and Wexford for failing to treat his hernia, and Count 3 will be dismissed.

## CONCLUSION

For these reasons, the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by the Wexford Defendants (Doc. 48) is **GRANTED in part and DENIED in part**. Count 1 shall proceed against Tammy Kimmel, Dr. John Coe, and Wexford Health Sources, Inc. Count 2 shall proceed only as to Wexford Health Sources, Inc.; Dr. John Coe and Travis James are **DISMISSED without prejudice**. Count 3 is **DISMISSED without prejudice** in its entirety.

**IT IS SO ORDERED.**

**DATED:   March 12, 2019**

_____
**NANCY J. ROSENSTENGEL
United States District Judge**